IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RALPH YANIZ, DOUGLAS MCCORMICK,

                Plaintiffs,

v.                                   Case No.:

CHICAGO WHITE SOX, LTD.

                Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs RALPH YANIZ and DOUGLAS MCCORMICK, for their class action complaint, states as follows:

## INTRODUCTORY STATEMENT

1. During a season where the White Sox have been historically bad and large swaths of seats at the ballpark remain empty, the White Sox have continued to engage in practices that discriminate against individuals with disabilities who wish to attend games.

2. The White Sox discriminate in the sale of tickets for accessible seats by refusing to sell accessible seat season tickets on their website. This forces individuals with disabilities who want season tickets to call to make a purchase, limiting the seats they can purchase to the few offered over the phone instead of being able to choose from all unsold accessible seats like other season ticket purchasers can do on the website.

3. The White Sox also have discriminatory restrictions on the website sale of accessible single game tickets, only offering a small percentage of accessible seats for sale on their website, and frequently limiting them to only certain areas of the stadium or certain games during the year. Many of the existing accessible seats remained empty during games throughout the season. For the majority of this season, the White Sox' website primarily offered accessible

seating in the outfield or upper deck. Only after the White Sox were assured of not making the playoffs did the White Sox release some accessible seats for sale closer to the infield on the main level.

## JURISDICTION

4. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States); and 42 U.S.C. §§ 1983-1988 since they arise under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.

5. This Court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this District.

## PARTIES

6. Ralph Yaniz is an individual with a disability. Mr. Yaniz resides in Park Ridge, in the Northern District of Illinois.

7. Douglas McCormick is an individual with a disability. Mr. McCormick resides in Chicago, in the Northern District of Illinois.

8. Defendant Chicago White Sox, Ltd. ("White Sox") is an Illinois entity that operates a Major League Baseball team whose home field is in the City of Chicago which is located in the Northern District of Illinois.

9. The White Sox are a public accommodation as defined by Title III of the ADA. 42 U.S.C. § 12181.

2

## **THE AMERICANS WITH DISABILITIES ACT ("ADA")**

10. The ADA contains four substantive Titles that address discrimination in the areas of employment, public services, public accommodations and commercial facilities, and telecommunications. 42 U.S.C. § 12101 *et seq*. Mr. Yaniz brings this complaint under Title III of the ADA, which governs public accommodations and protects individuals from discrimination on the basis of disability by public accommodations.

11. A public accommodation is defined by the ADA to include a "[t]heater, concert hall, stadium, or other place of exhibition or entertainment." 42 U.S.C. § 12181(1)(7)(C).

12. Under the ADA, a private entity cannot deny a person with disabilities "the full and equal enjoyment of [its] goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

13. The ADA's implementing regulations provide that "[a] public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individuals or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded other individuals." 28 C.F.R. § 36.202(b).

14. The implementing regulations also require public accommodations to provide their goods and services in "the most integrated setting appropriate to the needs of the individual." 28 C.F.R. § 36.203(a).

15. As to ticket sales, the implementing regulations require "that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating ... [d]uring the same stages of ticket sales; ... [t]hrough the same methods of distribution; ... [and] [i]n the same types and numbers of ticketing sales outlets." 28 C.F.R. § 36.302(f)(1)(ii).

16. The implementing regulations also require public accommodations upon inquiry to "[i]nform individuals with disabilities ... of the locations of all unsold or otherwise available accessible seating for any ticketed event or events at the facility." 28 C.F.R. § 36.302(f)(2)(i).

17. The Department of Justice has issued guidelines explaining the requirements for public accommodations to make their ticket sales compliant with the ADA.

18. These guidelines state that "the requirements, which are identical for title II and title III entities, apply to tickets sold for single events and those sold for a series of events (*e.g.*, subscriptions or season tickets)." U.S. Department of Justice Civil Rights Division, *ADA Requirements: Ticket Sales*, https://www.ada.gov/resources/ticket-sales/ (last updated Feb. 28, 2020) p. 2.

19. According to the Department of Justice, "venues are required to sell tickets for accessible seats in the same manner and under the same conditions as all other ticket sales" to comply with the ADA. *Id.* at 3.

20. This includes selling accessible seats "[t]hrough the same methods of purchase (including by telephone, on site, through a website, or through third-party vendors); and during the same stages of sale (pre-sales, promotions, general sales, wait lists, or lotteries) as non-accessible seats." *Id.* at 4.

21. In addition, "venues must generally offer accessible seats in all price categories available to the public." *Id.*

## CLASS ALLEGATIONS

22. Plaintiffs bring this suit individually and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of all similarly situated individuals.

23. The class that Plaintiffs seek to represent are composed of all people who qualify

4

for wheelchair accessible seating who seek to attend a home game played by the White Sox by purchasing either season tickets or a single game ticket on the White Sox' website.

24. Plaintiffs also seek to represent two subclasses: a) those who seek to purchase season tickets; and b) those who seek to purchase single game tickets.

25. The class and subclasses are so numerous that joinder of all members is impracticable. On information and belief, in the 2023 season the White Sox average over 18,000 fans in attendance per home game and, as recently as the 2022 season, averaged over 24,000 fans per game. On information and belief, an estimated 21 percent of Americans age 15 and older have a disability. A similar percentage of White Sox fans who wish to attend home games have disabilities.

26. There are questions of law common to the class and subclasses, including but not limited to whether the website ticketing platform operated by the White Sox conforms with the requirements of the Americans with Disabilities Act.

27. There are questions of fact common to the class and subclasses, including but not limited to the methods and stages of the White Sox' ticket sales of both the wheelchair accessible seats and other seats for home games.

28. Plaintiffs' claims are typical of the claims of the class and subclasses as all members have the same experience as Plaintiffs when seeking to purchase tickets on the White Sox website.

29. Plaintiffs seek common declaratory and injunctive relief from the Court requiring the White Sox to:

    a. offer season tickets for wheelchair accessible seats on its website and through all other methods of ticket purchase;

    b. offer all unsold wheelchair accessible seats for sale on its website and through all other methods of ticket purchase during the same stages of ticket sales as are available to purchasers who do not require accessible seats; and

5

      c.      offer all unsold wheelchair accessible seats for sale on its website and other methods of ticket purchase for all areas of White Sox Park that have accessible seating.

30. Plaintiffs will fairly and adequately protect the interests of the class and subclasses. All Plaintiffs are individuals with disabilities as that term is defined in the Americans with Disabilities Act and experienced a common harm and seek a common remedy.

31. Counsel for the Plaintiffs are experienced in handling federal class action litigation and will fairly and adequately represent the interests of the class. Access Living of Metropolitan Chicago has litigated numerous federal civil rights claims on behalf of persons with disabilities. Much Shelist is experienced in complex federal litigation and class action litigation.

32. Defendants have acted or refused to act on grounds that apply generally to the class and subclasses, so that final relief and the corresponding declaratory relief are appropriate respecting the class as a whole.

## STATEMENT OF THE CASE

33. The White Sox play their home games in a baseball stadium located at the intersection of 35th Street and South Shield Avenue. The stadium currently bears the name "Guaranteed Rate Field" ("White Sox Park").

34. White Sox Park primarily offers seating to the public in the Lower Deck, identified by section numbers 100 through 164 (nonconsecutively), and the Upper Deck, identified by section numbers 506-558 (nonconsecutively). There are also seats in the Club Level between the Lower Deck and the Upper Deck, but those sections do not have accessible seating.

35. There are sixty-three sections on the Lower Deck. Of those sixty-three sections, forty-four sections have wheelchair accessible seating identified on the White Sox online ticketing site. The wheelchair accessible seating is located at the back of each section that has such seating

adjacent to the concourse.

36. There are thirty-six sections on the Upper Deck. Of those thirty-six sections, six have wheelchair accessible seating identified on the White Sox online ticketing site. The wheelchair accessible seating is located at the front of each section that has such seating.

## RALPH YANIZ

37. Ralph Yaniz is a person with a disability as that term is defined in the Americans with Disabilities Act.

38. Mr. Yaniz is a person with muscular dystrophy. To accommodate that condition, Mr. Yaniz uses a wheelchair for mobility.

39. Mr. Yaniz is also a Chicago White Sox fan.

40. Prior to the 2022 baseball season, Mr. Yaniz purchased a 20-game season ticket plan from the White Sox.

41. As a person who uses a wheelchair, Mr. Yaniz purchased a plan for a seat that was designated as wheelchair accessible.

42. Mr. Yaniz made that purchase by calling the White Sox' ticket office. A ticket office employee offered to sell Mr. Yaniz a seat in one of two sections. Mr. Yaniz picked the section that was most attractive to him.

43. On or about November of 2022, Mr. Yaniz began the process of considering renewing his season tickets. He went online to mlb.com/whitesox/tickets and discovered there were many season ticket options with seating availability throughout White Sox Park. However, when he looked for wheelchair accessible seats online, the website responded by telling him that no seats were available.

44. On November 7, 2022, in response to an inquiry from the White Sox about whether

Mr. Yaniz wished to renew his season ticket package, Mr. Yaniz inquired whether he could purchase a season ticket plan for wheelchair accessible seats on the website where he had the ability to choose his own seats.

45. That same day, a White Sox Client Service Executive responded by telling Mr. Yaniz that he could not purchase season tickets for wheelchair accessible seats online.

46. Mr. Yaniz followed up with the Client Service Executive expressing his concern that making people who need accessible seating purchase season tickets differently from people who purchase standard seating was a big problem that needed to be corrected immediately.

47. No one responded to that concern.

48. Mr. Yaniz continued to shop for season tickets on the White Sox website, but no wheelchair accessible seating was available for season ticket package purchase throughout the winter.

49. On April 10, 2023, through counsel, Mr. Yaniz sent the White Sox a letter asking for a meeting and demanding the White Sox comply with the Department of Justice Guidelines covering ticket sales.

50. On April 15, 2023, Mr. Yaniz attended a White Sox home game. Unlike season tickets, the White Sox website did offer some wheelchair seats for sale, but only in the bleachers or in the expensive seats behind home plate.

51. At this game, Mr. Yaniz personally observed that large sections of the ballpark had wheelchair accessible seats that were unused and were not listed for sale on the website.

52. Of particular interest to Mr. Yaniz, almost all the wheelchair seats along the first and third base line were unused but were not listed for sale on the website.

53. Mr. Yaniz considers the seats along the first and third base lines particularly

important because they offer protection from the elements, especially from the sun, and are much more reasonably priced than seats behind home plate.

54. On April 26, 2023, Mr. Yaniz' counsel received a phone call from White Sox Senior Director of Guest Services and Suite Operations (Senior Director of Guest Services). Although the Senior Director of Guest Services had not seen the letter from Mr. Yaniz' counsel, she agreed to read it and to look into the issue Mr. Yaniz raised.

55. Also on that phone call, the Senior Director of Guest Services asserted that the White Sox website was broken and could not display the wheelchair accessible seats available for season ticket packages.

56. On May 3, 2023, Mr. Yaniz' counsel called the Senior Director of Guest Services again to inquire about her progress looking into the issue. On that call, the Senior Director of Guest Services explained that she believed that few or no wheelchair accessible seats were made available for season ticket purchase because the wheelchair accessible seats had to be reserved for various types of ticket packages in addition to the season ticket packages.

57. Because Mr. Yaniz had been monitoring the website and attending games, he had observed that the overwhelming number of accessible seats shown as unavailable on the website were not occupied on game days.

58. In response, Mr. Yaniz' counsel indicated his client's dissatisfaction with the Senior Director's answer, and the two agreed to a video meeting including Mr. Yaniz and senior employees from the White Sox ticket office.

59. On May 8, 2023, Mr. Yaniz went on the White Sox website looking at tickets available for the May 18, 2023 game.

60. Mr. Yaniz saw on the website that there were some single game tickets for

9

wheelchair accessible seats for sale, but they were almost exclusively in the upper deck or the bleachers. Except for some seats behind the dugouts and home plate, the accessible seats on the first and third base lines were generally not offered for sale.

61. On May 30, 2023, Mr. Yaniz, his counsel, the Senior Director of Guest Services and three employees from the White Sox ticket office met over video conference to discuss Mr. Yaniz' concerns.

62. During this videoconference, the Senior Director of Guest Services repeated the explanation that the need to hold back wheelchair accessible seats for other types of ticket promotions and sales was the cause of the lack of availability for season tickets.

63. Mr. Yaniz responded by pointing out that the White Sox were required to sell accessible seats under the same conditions as other tickets and that the stadium had large amounts of wheelchair seating that was simply not being used because it was not being offered for sale.

64. Mr. Yaniz also pointed out that existing wheelchair accessible seats on the first and third base lines were not offered as season ticket packages or as single game tickets, and were not being used, to his observation.

65. The Senior Director of Guest Services agreed to look further into this matter.

66. Mr. Yaniz continued to monitor the White Sox website, and continued to find that the tickets available for online purchase were overwhelmingly in the bleachers or the upper deck, and the wheelchair seats along the first and third base lines were not offered for purchase.

67. On June 9, 2023, after not hearing from the White Sox, Mr. Yaniz' counsel emailed the Senior Director of Guest Services asking for a response by June 20, 2023, and indicating that he would consider the lack of a response in that timeframe to be an indication that the White Sox no longer wished to discuss this matter.

68. As of the date of filing this complaint, neither Mr. Yaniz nor his counsel have received a response to that email.

69. On June 24, 2023, after purchasing a single game ticket, Mr. Yaniz attended a game at White Sox Park. In purchasing these tickets, Mr. Yaniz again could only find wheelchair accessible seats for sale in the bleachers, the upper deck, or behind home plate.

70. On that same day, Mr. Yaniz traveled through the stadium and observed that the wheelchair seats along the first and third baselines were largely empty, although a small number of individuals who appeared to be able bodied sat on folding chairs in some sections.

71. On or about August 10, 2023, once the White Sox were out of contention for the playoffs, Mr. Yaniz went on the White Sox' website and for the first time this season found two tickets for accessible seats in Section 154 for sale. He purchased both tickets for the August 26, 2023 game.

72. After making this purchase, Mr. Yaniz went back on the White Sox website and saw that there were no further accessible seats offered for sale in Section 154.

73. On August 26, 2023, at the game, Mr. Yaniz observed that the accessible seating in Section 154, like the other accessible seating in that part of the ballpark, was largely unoccupied, just as it had been throughout the season.

74. Mr. Yaniz also observed that the number of seats offered for sale in Section 154 were significantly fewer than the actual number of accessible seats in this section.

75. Even though the White Sox had finally made some seats available in this section of the ballpark, the White Sox continued to hold back the vast majority of accessible seats from purchase.

## DOUGLAS MCCORMICK

76. Douglas McCormick is a person with a disability as that term is defined in the Americans with Disabilities Act.

77. Mr. McCormick is a person with mobility disability centered on his right side. To accommodate that condition, Mr. McCormick uses a scooter for mobility. Mr. McCormick can walk short distances unassisted, but for longer distances he uses the scooter.

78. Mr. McCormick is also a Chicago White Sox fan. He has been a fan since he was in grade school.

79. Beginning in 1991, the date the current White Sox Park opened, Mr. McCormick attended around twenty-five to thirty games a year at the Park.

80. In or around the 2019 baseball season, Mr. McCormick recognized his need to access White Sox Park using a scooter.

81. Because of the seating limitations caused by the COVID pandemic, Mr. McCormick chose to purchase season tickets to make sure he would be able to get tickets and attend multiple games.

82. Prior to the 2021 baseball season, Mr. McCormick responded to promotions and spoke to a ticket representative about season tickets.

83. The ticket representative would not sell Mr. McCormick season tickets for the wheelchair accessible seats. Instead, the ticket representative told Mr. McCormick to purchase season tickets for regular seats and trade them each game day at Guest Relations for accessible seats.

84. Based on this advice, Mr. McCormick purchased season tickets for inaccessible seats in Section 154. The wheelchair accessible seats in Section 154 fit his scooter, which requires

more room to maneuver than many wheelchairs. Also important, Section 154 offers shade and is at a price point that is important to Mr. McCormick.

85. Some of the wheelchair accessible seating in White Sox Park is constructed so that Mr. McCormick cannot exit the section unless everyone else in the section leaves first.

86. That year, Mr. McCormick would go online on the day of the games for which he had season tickets and review where there was available wheelchair accessible seating.

87. Mr. McCormick and his son had season tickets for Section 154. Because Mr. McCormick checked on-line, he would ask for accessible seating in that same section when he came to the Park.

88. Even though Mr. McCormick had tickets for inaccessible seats in Section 154, and the ticket representative had advised Mr. McCormick to purchase those inaccessible seats and trade them at Guest Relations, Guest Relations would not always offer to trade his seats for the accessible seats in the same section.

89. Because Mr. McCormick checked online the day of each game, he knew there were available accessible seats in Section 154 and would advocate that he should get those seats.

90. About half the time the staff in Guest Relations would oblige and provide him with accessible seats in Section 154; for the other half, Guest Relations placed Mr. McCormick and his son in another section.

91. When Guest Relations refused to keep Mr. McCormick in Section 154, Guest Relations generally told him there were no accessible seats open even though they showed as available online.

92. Often when Mr. McCormick was not allowed to sit in Section 154, he passed by that section and observed that there were available wheelchair accessible seats.

13

93. In 2021, the White Sox made the playoffs. Mr. McCormick and his son purchased tickets online because they appeared for sale.

94. Those tickets were for seats in the outfield. Those seats are not adjusted to have a sightline above the fans sitting in front, and the White Sox allow fans to stand behind those accessible seats, making the seats undesirable.

95. Prior to the 2022 baseball season, Mr. McCormick called the ticket representative and stayed on the phone demanding that he be allowed to purchase season tickets for the wheelchair accessible seats in Section 154.

96. After about three hours on the phone, Mr. McCormick was finally allowed to purchase a season ticket package for the wheelchair accessible seats in Section 154.

97. During that season, the Senior Director of Guest Services would frequently visit Section 154 and demand to know what people's disabilities were.

98. One game that year, Mr. McCormick's son attended a game with a friend instead of with his father. He went to Guest Relations and tried to exchange the seats for regular seats.

99. When Mr. McCormick's son tried to exchange the seats, he was questioned as to the reason he had the seats, and his request was not honored.

100. Although the White Sox staff did not challenge Mr. McCormick's right to the accessible seats he had purchased, the confrontational behavior towards the other season ticket holders and his son reduced the value of the experience at the Park.

101. Because of the experience in 2022, prior to the 2023 baseball season, Mr. McCormick and his son decided to not purchase season tickets and instead buy single game tickets.

102. Mr. McCormick has purchased single games tickets online in 2023. Usually there are no wheelchair accessible seats shown for purchase.

14

103. When no wheelchair seats were shown for sale, Mr. McCormick purchased inaccessible seats in Section 154. After arriving at the stadium, he asked to exchange his seats for wheelchair accessible seats in the same section.

104. Even though wheelchair accessible seating in Section 154 is not shown as available online, Mr. McCormick is generally able to trade his tickets for wheelchair accessible seats in this section.

105. There is significant variability in the experience of each accessible seating section in White Sox Park beyond the seating considerations typically important to baseball spectators. For Mr. McCormick, the differences in size of the wheelchair accessible areas, the areas' proximity to standing fans, their sight lines, the impact of the concessions on the experience of the area and the proximity to accessible washrooms all impact the value of each particular section.

106. Because of that variability, Mr. McCormick places great importance on his ability to choose his seats when he attends a White Sox game.

## COUNT I
## THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12181, *et seq.*)

107. Paragraphs 1-106 above are incorporated as if set forth fully herein.

108. Defendant is a public accommodation as that term is defined by the ADA. 42 U.S.C. § 12181.

109. Title III of the ADA prohibits Defendant from discriminating against individuals with disabilities. 42 U.S.C. § 12181, *et seq.*

110. The ADA prohibits public accommodations from denying a person with disabilities "the full and equal enjoyment of [their] goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(a).

15

111. The ADA prohibits Defendant from segregating individuals with disabilities. 28 C.F.R. § 36.203(a).

112. Ralph Yaniz is a qualified individual with a disability within the meaning of the ADA.

113. Douglas McCormick is a qualified individual with a disability within the meaning of the ADA.

114. Defendant is operating a ticketing program that provides an unequal benefit to Plaintiffs in that ticket purchasers who require accessible seating do not have the same ability to purchase tickets online as ticket purchasers who do not require such seating.

115. Defendant discriminates against Plaintiffs by refusing to offer season tickets for wheelchair accessible seats on its website and through all other methods of ticket purchase.

116. Defendant discriminates against Plaintiffs by refusing to offer all unsold wheelchair accessible seats for sale on its website and through all other methods of ticket purchase during the same stages of ticket sales as are available to purchasers who do not require accessible seats.

117. Defendant discriminates against Plaintiffs by refusing to offer all unsold wheelchair accessible seats for sale on its website and through all other methods of ticket purchase for all areas of White Sox Park that have accessible seating.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray that this Court:

A. Determine that this action may proceed as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Appoint the undersigned as class counsel pursuant to Federal Rule of Civil Procedure 23(g);

16

  C. Declare that the White Sox current practice of not offering for sale all unsold wheelchair accessible seats in White Sox Park for season tickets and individual game tickets violates the Americans with Disabilities Act;

  D. Declare that the White Sox current practice of limiting single game tickets for wheelchair accessible seats to only certain areas of White Sox Park despite the wide availability of wheelchair accessible seating itself violates the Americans with Disabilities Act;

  E. Enter a preliminary and permanent injunction against the Defendant ordering them to:

    1. offer season tickets for wheelchair accessible seats on its website and through all other methods of ticket purchase;

    2. offer all unsold wheelchair accessible seats for sale on its website and through all other methods of ticket purchase during the same stages of ticket sales as are available to purchasers who do not require accessible seats; and

    3. offer all unsold wheelchair accessible seats for sale on its website and other methods of ticket purchase for all areas of White Sox Park that have accessible seating.

  F. Award Plaintiffs reasonable costs, litigation expenses and attorneys' fees.

  G. Grant such other relief as this Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiffs demand a jury trial on all issues properly triable by a jury.

| | |
|---|---|
| Dated: September 13, 2023 | Respectfully submitted, |
| | **RALPH YANIZ, DOUGLAS MCCORMICK** |
| | By: */s/ Steven P. Blonder*<br>One of Their Attorneys |

Steven P. Blonder
Jason M. Rosenthal
Laura A. Elkayam
Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606-2000
Phone: 312-521-2402
sblonder@muchlaw.com
jrosenthal@muchlaw.com
lelkayam@muchlaw.com

Charles R. Petrof
Access Living of Metropolitan Chicago
115 W. Chicago Avenue
Chicago, Illinois 60654
Phone: (312) 640-2124
cpetrof@accessliving.org